```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                  MIDDLE DISTRICT OF PENNSYLVANIA


CYNTHIA SANDS,                         :
                                       :
        Plaintiff                      :    No. 4:01-CV-1475
                                       :
    vs.                                :    Complaint Filed 08/03/01
                                       :
SHERRY WAGNER, DONALD W. KLINE, II,    :
STAT NURSE, INC., STAT HEALTH          :    (Judge Muir)
SERVICES, INC., GUARDIAN HEALTH        :
SERVICES, INC., TRIAGE STAFFING        :
INC., GHS HEALTHCARE INC., NORDIC      :
INVESTMENTS, TIR PARTNERS, and         :
GUARDIAN NURSING SERVICES, INC.,       :
                                       :
        Defendants                     :
```

ORDER #1 of

April 25, 2006

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

A significant portion of this order's background is set forth in our order of December 20, 2005, in which we discussed the procedural posture of this case and established a deadline of February 1, 2006, for the parties to file motions for summary judgment. In summary, this case is to be retried as a result of our granting the Defendants' motions for a new trial in our order #1 of March 29, 2004. Plaintiff Cynthia Sands appealed that order and on September 15, 2005, the Court of Appeals for the Third Circuit remanded the case to us after concluding that it lacked jurisdiction over the appeal.

In our order of December 20, 2005, we expressed the view that

> some of the pending issues ... may be addressed by way of summary judgment motions. For instance, unless there is new evidence which was not presented to the jury during the original trial, it is possible that Wagner may be entitled to summary judgment with respect to Sands's breach of contract claim and Wagner's breach of contract counterclaim. The consequences of Sands's breach could also conceivably affect her claims against Kline and the companies associated with him.

(Order of December 20, 2005, p. 2)

On January 31, 2006, Defendants Donald W. Kline, II, Stat Health Services, Inc. (Now known as Guardian Health Services, Inc.), GHS Healthcare, Inc. (Now known as Guardian Nursing Services, Inc.), TIR Partners, and Nordic Investments, Inc. (hereinafter collectively "the Kline Defendants") filed a motion for summary judgment. Defendant Sherry Wagner filed such a motion on February 2, 2006. Supporting and opposition briefs were timely filed in connection with both summary judgment motions. The dispositive motion filed by the Kline Defendants became ripe for disposition upon the filing of their reply brief on March 10, 2006. Wagner's summary judgment motion ripened when she filed her reply brief on April 17, 2006.

Summary judgment is appropriate only when there is no genuine issue of material fact which is unresolved and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. Peterson v. Lehigh Valley Dist.

Council, 676 F.2d 81, 84 (3d Cir. 1982).  "When a motion for summary judgment is made and supported as provided in ...[Rule 56], an adverse party may not rest upon mere allegations or denials of the adverse party's pleading...."  Fed. R. Civ. P. 56(e).

Before reviewing the undisputed and disputed material facts, we will highlight the specific legal issues raised in this case. The parties agree that Pennsylvania law controls our consideration of those issues.

Sands's second amended complaint, filed on December 21, 2005, contains the following claims: 1) a breach of contract claim against Wagner; 2) a civil conspiracy and fraud claim against all of the defendants; 3) an unjust enrichment claim against all of the defendants; and 4) a promissory estoppel claim against Wagner.  Wagner has filed a counterclaim against Sands in which Wagner alleges that Sands breached the Stock Purchase Agreement by not providing Wagner with all of the items which the agreement required Sands to transfer to Wagner.[1]

In our order #1 of March 29, 2004, we stated the following:

... While Wagner focused primarily on physical objects [in

---

[1] On November 23, 2005, Wagner filed a motion to amend her counterclaim.  We withheld ruling on the motion pending our rulings on the Defendants' motions for summary judgment.  In our order #2 of this date we rule on Wagner's motion to amend her counterclaim.  None of the issues raised in connection with that motion affected our consideration of the Defendants' summary judgment motions.

> asserting her counterclaim], such as a new computer she
> alleges she did not receive, the scope of her argument
> extends to intangible items such as bank accounts.
> . . .
> Based on the governing law and the undisputed evidence,
> Sands was contractually obligated to provide Wagner with the
> Stat Nurse checking account set up at The First National
> Bank of Berwick.  Sand's [sic] failure to do so adversely
> affected the business of Stat Nurse and constitutes a
> complete breach of the Stock Purchase Agreement.
> . . .
>      We emphasize, however, that in this order we do not rely
> on any speculation as to what the potential consequences may
> have been if access to the corporate bank account had been
> provided to Wagner.  Our analysis ends with the conclusions
> that 1) the jury's answer to special verdict question
> twenty-one was against the weight of the evidence because by
> operation of law Sands had breached the stock purchase
> agreement; and 2) a new jury trial should be held to
> evaluate the circumstances surrounding, the significance of,
> and the consequences of Sands's breach.

(Order #1 of March 29, 2004, pp. 7, 11-12)

In our view the pivotal issue underlying all of the causes of action presented in this case, including Wagner's counterclaim, relates to the circumstances surrounding, the significance of, and the consequences flowing from Sands's breach of the Stock Purchase Agreement.  Those factors bear directly on whether Sands's breach of the Stock Purchase Agreement may be characterized as a <u>material</u> breach.

Pennsylvania courts have consistently held that

> "[w]hen performance of a duty under a contract is due, any
> nonperformance is a breach." Restatement (Second) of
> Contracts § 235(2) (1981). *See Barnes v. McKellar,* 434
> Pa.Super. 597, 644 A.2d 770 (1994); *Camenisch v. Allen,* 158
> Pa.Super. 174, 44 A.2d 309 (1945). If a breach constitutes a
> material failure of performance, then the non-breaching
> party is discharged from all liability under the contract.
> *Oak Ridge Const. Co. v. Tolley,* 351 Pa.Super. 32, 504 A.2d

4

>1343 (1985). If, however, the breach is an immaterial failure of performance, and the contract was substantially performed, the contract remains effective. *Cimina v. Bronich,* 517 Pa. 378, 537 A.2d 1355 (1988); *Borough of Greentree to Use of Castelli Const. Co. v. Tortorete,* 205 Pa.Super. 532, 211 A.2d 76 (1965); *Schlein v. Gross,* 186 Pa.Super. 618, 142 A.2d 329 (1958). *Accord* John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 11-22 (2d ed.1977). In other words, the non-breaching party does not have a right to suspend performance [if the breach is not material]. Whether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end "is a question of degree; and must be answered by weighing the consequences in the actual custom of men in the performance of contracts similar to the one that is involved in the specific case." *Gray v. Gray,* 448 Pa.Super. 456, 468, 671 A.2d 1166, 1172 (1996) (citing *2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies,* 319 Pa.Super. 228, 242-43, 466 A.2d 132, 139 (1983) (citations omitted)).

Widmer Engineering, Inc. v. Duvalla, 837 A.2d 459, 467-468 (Pa. Super. 2003). Based on that authority, despite the conclusion that Sands has breached the Stock Purchase Agreement, Sands may still proceed with a breach of contract claim against Wagner (and her derivative claims against the Kline Defendants) if Sands's conduct does not constitute a <u>material</u> breach of the Stock Purchase Agreement.

In this case we further emphasize that "... the question whether there has been a material breach is ordinarily for the jury." Resource America, Inc. v. Certain Underwriting Members of Lloyd's Subscribing to Policy Number 501/FT98AAAF, 2004 WL 2580554, *3, 69 Pa. D. & C.4th 496 (2004)(quoting Cameron v. Berger, 336 Pa. 229, 235, 7 A.2d 293, 296 (1939)). Although <u>Resource America</u> and <u>Cameron</u> involved insurance contracts,

Pennsylvania courts have applied the principle in other types of contract actions. *See* Ott v. Buehler Lumber Co., 373 Pa.Super. 515, 518-519, 511 A.2d 1143, 1145 (Pa.Super. 1988)(applying the concept in a case based on the alleged breach of an employment contract).

We will apply those legal standards to the material facts.

Sands and Wagner entered into a Stock Purchase Agreement dated October 10, 1997. Pursuant to the terms of the agreement, Sands agreed to sell to Wagner 100% of the issued and outstanding capital stock of the corporation Stat Nurse, Inc. Wagner agreed to buy the stock for a price of $250,000. The purchase price was to be paid from the revenue of the corporation as set forth in Paragraph 3 of the agreement.

Sands agreed in paragraph 5 of the Stock Purchase Agreement to "deliver to the [Wagner] all corporate minute books, corporate seals, stock certificate books, and other appropriate corporate records." Paragraph 6 of the Stock Purchase Agreement required Sands to "deliver to [Wagner] all necessary documents required by any banks or other depository to remove the current authorized signatures and replace them with the buyer's designees."

Paragraph 9 of the Stock Purchase Agreement required Wagner "to carry on the business of Stat Nurse, Inc., diligently and substantially in the same manner as it has been historically."

At the time of closing on the Stock Purchase Agreement, the

corporation Stat Nurse, Inc., held a checking account with the First National Bank of Berwick, Pennsylvania, being Account No. 0505240301 in the name of Stat Nurse, Inc., c/o Cynthia sands R.R. 2, Box 2968, Berwick, Pennsylvania, 18603.  The mailing address for the account statements was the home address of Sands.

The checks attached to the bank statements reflect that Check No. 3793, in the amount of $10,000.00, payable to Tri-Am RV center, Inc., was written from the corporate account on October 13, three days after the closing on the Stock Purchase Agreement. While Check No. 3794 bears the handwritten date of October 9, 1997, that check was written in series after Check No. 3793.

The checks numbered 3793 through and including 3807 total $41,841.42.  On and after October 10, 1997, Wagner was the sole owner of Stat Nurse, Inc., but she did not authorize or know about the writing of any of those checks from the Stat Nurse, Inc., bank account after the closing date.

The checkbook utilized by Sands for the Stat Nurse, Inc., account was a One-Write Checkbook System for which the information handwritten on the check would transfer directly onto a ledger card at the time the check was written.  The ledger card reflects six checks written on October 10, 1997, all of which appear in numerical order prior to checks numbered 3793 and 3794. As of the last check written on October 10, 1997, Check No. 3792, the ledger reflects a bank balance in the Stat Nurse, Inc.,

account in the amount of $43,467.12.

Shortly after she purchased Stat Nurse, Inc., Wagner borrowed money from Dr. William Hauck to operate the business. The loan from Dr. Hauck was up to $36,000 by January 31, 1998. At trial Dr. Hauck testified that he lent the money to Wagner to operate the business.

Dr. Hauck imposed the following three conditions on his loan to Wagner: 1) Donald W. Kline, II, would manage the money; 2) the money would be returned to him in short order; and 3) promissory notes and an agreement would be drawn up.  Promissory Notes dates November 20, 1997, December 12, 1997, and January 2, 1998, were prepared.  An additional Agreement between Kline and Wagner dated October 20, 1997, was prepared.

Kline told Dr. Hauck that he was leaving the business in late January or February of 1998.  Dr. Hauck became concerned about being repaid his money at that time, because of the agreement requiring that Kline handle the money.

In April or May 1998, Dr. Hauck called Wagner and demanded repayment of the loan.  The money was repaid to Dr. Hauck in April or May of 1998.

In the years prior to the sale of Stat Nurse, Inc., to Wagner, Stat Nurse, Inc., historically maintained a substantial cash balance in its checking and savings accounts, as reflected on the Stat Nurse, Inc., balance sheets provided by Sands to

Wagner before the sale of the company to Wagner. Those financial statements reflect year-end cash balances as follows:

        1993        $16,009.00

        1994        $29, 301.41

        1995        $25,321.79

        1996        $16,458.31

The Stat Nurse, Inc., balance sheet for June 30, 1997, reflected a balance in Stat Nurse, Inc.'s, checking account with the First National Bank in the amount of $46,622.77.

All of the aforesaid balance sheets reflect the checking account at the First National Bank as an asset of Stat Nurse, Inc.

    Prior to the closing on the Stock Purchase Agreement, the corporation had experienced dramatically declining sales during the year 1997, which reduced the accounts receivable for the corporation from $128,560.00 at the beginning of 1997 to $7058.60 at the time of the Stock Purchase Agreement.

    The above facts are undisputed. However, those are not the only material facts to consider. The documents filed by the parties in connection with the Defendants' motions for summary judgment indicate that many critical facts concerning the materiality of Sands's breach of the Stock Purchase Agreement remain in dispute. The disputed facts relate to events which occurred before and after Sands and Wagner signed the Stock Purchase Agreement.

For instance, in paragraphs 10 through 12 of her Statement of Facts in support of her summary judgment motion, Wagner asserts the following:

> 10. The First National Bank of Berwick bank statements were not provided to Wagner with the corporate records for Stat Nurse, Inc.
>
> 11. Wagner only learned of the continued existence of the account after the records were subpoenaed by her lawyer during the course of discovery in this litigation.
>
> 12. At the time of closing on the transaction, Wagner's lawyer, Mr. Fetter, asked Sands whether there were any outstanding accounts for the corporation, State, Nurse, Inc., and Sands asserted that any such accounts were closed out.

Sands denies each of those material facts.

The materiality of Sands's breach is also called into question by the fact that Wagner obtained cash to operate the business by way of the loan from Dr. Hauck. Pennsylvania law requires that the issue of materiality be resolved by a jury.

The material facts in dispute preclude the entry of summary judgment as to any claim or issue in this case. We will deny the Defendants' motions for summary judgment.

NOW, THEREFORE, IT IS ORDERED THAT:

1. The motion for summary judgment (Document 358) filed by the Kline Defendants is denied.

2. The motion for summary judgment (Document 359) filed by

Wagner is denied.

                                              s/Malcolm Muir
                                              MUIR, U.S. District Judge

MM:ga