UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


CYNTHIA SANDS,                          :
                                        :
        Plaintiff                       :    No. 4:01-CV-1475
                                        :
    vs.                                 :    Complaint Filed 08/03/01
                                        :
SHERRY K. WAGNER,                       :
DONALD W. KLINE, II, STAT NURSE,        :
INC., STAT HEALTH SERVICES, INC.,       :    (Judge Muir)
GUARDIAN HEALTH SERVICES, INC.,         :
TRIAGE STAFFING INC.,                   :
GHS HEALTHCARE INC., NORDIC             :
INVESTMENTS, TIR PARTNERS, and          :
GUARDIAN NURSING SERVICES, INC.,        :
                                        :
        Defendants                      :

ORDER

January 11, 2008

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

The lengthy and complicated procedural and factual history

of this case is set forth in our orders of July 24, 2007,

September 14, 2007, and October 9, 2007.  We need not repeat

those histories in this order.  In the most recent order we

granted Plaintiff Cynthia Sands's motion to reinstate the

judgment in her favor which had initially been entered on January

7, 2004, after a jury trial.

On October 19, 2007, Defendants Sherry K. Wagner, Stat

Nurse, Inc., and Triage Staffing (hereinafter collectively the

"Wagner Defendants") filed a "Motion to Set Aside Verdict and for

New Trial and Motion for Judgment NOV" pursuant to Federal Rules

of Civil Procedure 50(b) and 59(a).  A brief in support of that motion was filed on October 29, 2007.  After receiving an extension of time in which to do so, on December 5, 2007, Sands filed an opposition brief.  The Wagner Defendants filed a reply brief on December 10, 2007.  We did not consider the motion to be ripe for disposition at that point because of the related motion discussed in the following paragraph.

On October 18, 2007, Defendants Donald W. Kline, II, Stat Health Services, Inc., Guardian Health Services, Inc., GHS Healthcare, Inc., Guardian Nursing Services, Inc., TIR Partners, and Nordic Investments, Inc. (hereinafter collectively the "Kline Defendants"), filed a "Motion to Set Aside Verdict and for New Trial and Motion for Judgment NOV" pursuant to Federal Rules of Civil Procedure 50(b) and 59(a).  A brief in support of that motion was filed on November 18, 2007.  On December 6, 2007, Sands filed her opposition brief.  The Kline Defendants filed a reply brief on December 18, 2007.  At that point both post-trial motions became ripe for disposition.

As a threshold matter we note that a number of contentions raised by the Kline Defendants in their post-trial motion are not addressed at all in their supporting brief.  For example, in paragraph 17 of the motion, the Kline Defendants assert that

> [t]he court's order reinstating the judgment based on the
> verdict of the first jury, after the retrial of only one
> phase of the case[,] constitutes a violation of the moving
> defendants [sic] constitutional right to trial by jury.

(Kline Defendants' Post-trial Motion, p. 5, ¶17)

We are of the view that any contentions raised in the Kline Defendants' motion but not discussed in their supporting brief has been withdrawn. *See* M.D. Pa. Local Rule 7.30 (providing that if "a supporting brief is not filed within the time provided by this rule, such motion shall be deemed to be withdrawn.")  In this order we will discuss further only the issues addressed in the movants' supporting briefs.

Sands's initial response to both post-trial motions is that they should be summarily denied because of the procedural posture of this case.  According to Sands,

> any errors which allegedly occurred during either of the two trials were addressed through the first two [sets of] post-trial motions filed by Defendants at the close of those respective trials.  As such, Defendants' filing of post-trial motions for a third time, when there has not been a third trial held, contravenes the purpose behind post-trial motions in that such a motion is not being used to rectify any errors from a trial.  Rather, Defendants are using such a Motion to relitigate the same issues previously raised in their prior post-trial motions which were already ruled upon by the Court.

(Sands's Brief Opposing Wagner Defendant's Post-trial Motion, p. 12; Sands's Brief Opposing Kline Defendants' Post-trial Motion, p. 9)

This argument would have some merit if we had addressed and ruled upon the substantive merits of every contention raised in the Defendants' prior post-trial motions.  However, that is not the case.

In their first set of post-trial motions filed in January of 2004 after the initial jury trial, the Defendants sought a judgment notwithstanding the jury's verdict or, in the alternative, a new trial. We first considered whether the Defendants were entitled to a new trial and for the reasons stated in our Order #1 of March 29, 2004, we concluded that such relief was appropriate because the jury's answer to a single special verdict question (Question Number 21) was against the weight of the evidence. In the light of that conclusion, we did not consider 1) a number of other challenges by the Defendants to the verdict, or 2) the alternative issue of whether the Defendants were entitled to judgment notwithstanding the jury's verdict. Consequently, we did not address a number of contentions which the Defendants had raised in their initial post-trial motions.

We agree with Sands in that no contention should be reconsidered if it has been previously asserted by a Defendant, addressed by the court on the merits, and again raised by the Defendants in their pending post-trial motions. We will reject all such arguments as being improper and untimely attempts to have us reconsider prior rulings.

No Defendant has expressly requested reconsideration of any prior ruling. With respect to any contention which has previously been asserted by a Defendant, we will consider in this

4

order the merits of only those contentions which were not addressed and ruled upon in a prior order.

We next turn to the legal standards controlling our review of the pending post-trial motions.

Our consideration of the pending post-trial motions is governed by Federal Rules of Civil Procedure 50 (entitled "Judgment as a Matter of Law in Jury Trials; Alternative Motion for New Trial; Conditional Rulings"), 51 (entitled "Instructions to Jury; Objections; Preserving a Claim of Error"), and 59 (entitled "New Trials; Amendment of Judgments").  Those three rules were affected by amendments that became effective on December 1, 2007.  However, the Advisory Committee Notes to those amendments state that the "changes are intended to be stylistic only." Fed.R.Civ.P. 50, 51, and 59, advisory committee's notes. Consequently, we will cite and rely upon the versions of those rules in effect immediately prior December 1, 2007.

We first consider the concepts applicable to the parties' motions for "judgment NOV."  The Court of Appeals for the Third Circuit has noted that "[t]he motion for judgment n.o.v. is now one of three motions called a motion for 'judgment as a matter of law.'" Starceski v. Westinghouse Elec. Corp. 54 F.3d 1089, 1093 (3d Cir. 1995)(citing Fed.R.Civ.P. 50(a)).  "The standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250- 251, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Celotex Corp. v.

Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986).

When considering a motion for judgment as a matter of law we

are to

> draw all reasonable inferences in favor of the nonmoving
> party, and [we] may not make credibility determinations or
> weigh the evidence. ...  "Credibility determinations, the
> weighing of the evidence, and the drawing of legitimate
> inferences from the facts are jury functions, not those of a
> judge." ...  <u>Thus, although the court should review the
> record as a whole, it must disregard all evidence favorable
> to the moving party that the jury is not required to
> believe</u>. ...  That is, the court should give credence to the
> evidence favoring the nonmovant as well as that "evidence
> supporting the moving party that is uncontradicted and
> unimpeached, at least to the extent that that evidence comes
> from disinterested witnesses."

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-

151, 120 S. Ct. 2097, 2010 (2000)(Emphasis added)(citing and

quoting Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555, 110

S.Ct. 1331 (1990); Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

254, 106 S.Ct. 2505 (1986); Continental Ore Co. v. Union Carbide

& Carbon Corp., 370 U.S. 690, 696, n. 6, 82 S. Ct. 1404 (1962).

We pause here to note that the evidence upon which the

Defendants rely in their post-trial motions is essentially that

of their own testimony.  As noted by the Court of Appeals in

<u>Reeves</u>, such evidence may be summarily disregarded in the context

of a motion for judgment as a matter of law.

The United States Court of Appeals for the Third Circuit has further stated that

> [i]n deciding whether to grant a motion for JNOV, the trial court must ... determine whether the record contains the 'minimum quantum of evidence from which a jury might reasonably afford relief.'

Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 691 (3d Cir. 1993)(quoting Keith v. Truck Stops Corp. Of America, 909 F.2d 743, 745 (3d Cir. 1990)).

We next discuss the relatively less rigorous standard governing the Defendants' motions to set aside the verdict and grant a new trial.  The Court of Appeals for the Third Circuit has recognized

> the precept that a new trial may be granted even when judgment n.o.v. is inappropriate. *American Bearing Co.,* 729 F.2d at 948 n. 11; *see, e.g., Rousseau v. Teledyne Movible Offshore, Inc.,* 812 F.2d 971, 972 (5th Cir.)(affirming grant of new trial even though there was "legally sufficient evidence to support the verdict, thus foreclosing a j.n.o.v."), *cert. denied,* --- U.S. ----, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987); 9 Wright & Miller § 2539 at 608 ("In many instances the judge might grant a new trial on th[e] ground [that the verdict is against the weight of the evidence] even though he is constrained to refuse to order judgment [n.o.v.].").

Roebuck v. Drexel University, 852 F.2d 715, 735-736 (3d Cir. 1988).  The Court of Appeals for the Third Circuit has further noted

> that the district court's power to grant a new trial motion is limited to those circumstances "where 'a miscarriage of justice would result if the verdict were to stand.'" *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 211 (3d Cir.1992)(quoting *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1352 (3d Cir.1991)), *cert. denied,* --- U.S. —,

113 S.Ct. 1285, 122 L.Ed.2d 677 (1993).   As we explained in
*Fineman*, <u>the purpose of this rule is to ensure that the
trial court does not supplant the jury verdict with its own
interpretation of the facts</u>. *Id.* (citing *Lind v. Schenley
Indus., Inc.,* 278 F.2d 79, 90 (3d Cir.)(in banc), cert.
denied, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960)).

Olefins Trading, Inc. v. Han Yang Chem Corp., 9 F.3d 282, 290 (3d

Cir. 1993)(Emphasis added).   Consistent with that purpose is the

principle that when considering a motion for a new trial a

district court "must proceed cautiously and not substitute its

own judgment of the facts and assessment of the witnesses'

credibility for the jury's independent evaluation." Advanced

Cardiovascular Systems, Inc. v. Medtronic Vascular, Inc., 485

F.Supp.2d 519, 523 (D.Del., 2007)(Robinson, J.).

One glaring deficiency in the Defendants' supporting briefs

is their complete failure to make any reference whatsoever to

those standards.   Wagner's current *pro se* status may explain the

oversight on her part.

As emphasized by the cases cited above, when considering a

motion to set aside a verdict and grant a new trial, or

alternatively render a "judgment NOV," the manner in which a

court may consider the evidence presented to the jury is of

paramount importance.

Throughout their motions, supporting briefs, and reply

briefs, the Defendants repeatedly and boldly claim that

"uncontested evidence" supports positions favorable to them, and

that absolutely no "competent evidence" bolsters Sands's claims.

8

Even the most cursory review of the governing legal standards and the evidence of record reveals that such comments concerning the evidence are inaccurate and misleading.  At the very least the statements made by the Defendants reflect their failure to acknowledge the pivotal, if not decisive, role that credibility played in this case.

With the controlling legal standards and concepts in mind, we turn to the substantive contentions raised by the Defendants in their post-trial motions and briefs.

Wagner's first contention is that the Stock Purchase Agreement at issue in this case "was against public policy" and "should be considered void *ab initio*" because of Stat Nurse's long-standing practices of 1) staffing nurses where they would not be supervised by a medical doctor, and 2) illegally treating certain nurses as independent contractors when they should be treated as employees. (Wagner's Brief in Support of Post-trial Motion, p. 8)

Our initial reaction to this contention is that Wagner has waived it by not raising it an earlier point in this case. Wagner does not identify any newly discovered information in connection with this contention.  This contention could and should have been raised in a pretrial motion filed years ago. The matter should also have been presented to the jury in a special verdict question.  Wagner's failure to propose such a

question is an additional basis to deem the issue as having been waived.  However, even if the contention is not waived, we do not find it persuasive.

The allegedly illegal practices referenced by Wagner in this first contention are not expressly set forth in the Stock Purchase Agreement.  In the most general sense, the agreement simply provided for the sale of a business.  There is nothing inherently illegal or contrary to public policy in such a sale.

The potentially illegal practices cited by Wagner relate strictly to the manner in which the business was or could have been run.  Sands testified at trial that she was aware of the potential illegality, obtained legal advice from attorneys specializing in this field, and followed their advice as to how the business should be run legally.  The Defendants introduced conflicting evidence on the issue, primarily in the form of Wagner's and Kline's own testimony.

There was sufficient evidence introduced by Sands to support the conclusion that she had not operated Stat Nurse in an illegal manner.  Wagner's assertions to the contrary are based in large measure upon assessments of witnesses' credibility.  The Defendants have not presented us with any sufficiently compelling reason to disturb either the jury's credibility assessments or its factual findings.

Wagner's conclusion that the contract should be rendered

void because it was contrary to public policy is without merit. She is not entitled to any relief based upon that claim.

Wagner's second argument is that "Sands [sic] sole actions directly caused the failure to Stat Nurse, Inc., therefore, she is not entitled to recover under the agreement." (Id., p. 10) The Kline Defendants raise this argument as well in the brief supporting their post-trial motion.  They claim that Sands failed substantially to perform the obligations imposed upon her by the Stock Purchase Agreement, and that Sands materially breached the agreement.

In this argument all of the Defendants seek to have us apply the doctrine of substantial performance and conclude that Sands did not substantially perform the obligations imposed upon her by the Stock Purchase Agreement.  The parties previously requested us to take those steps and in our order of July 24, 2007, we declined to do so.  For the reasons stated in that order, this argument is without merit.  We further note that no Defendant has asserted any basis to reconsider the reasoning and conclusions in our order of July 24, 2007.

The additional component of this argument asserted by the Kline Defendants is that Sands materially breached the Stock Purchase Agreement.  This issue was presented to the jury by way of a special verdict question at the conclusion of the first phase of the second trial.  The balance of the second trial was

11

aborted because of an extremely prejudicial remark by Sands's counsel in his opening statement on the second phase. He stated in part

> that Mrs. Sands had been a victim in this case of fraud and deceit. And after the show that was put on for you all since last Thursday, I realized there's now ten more victims: (pointing to each juror in succession and stating) one, two, three, four, five, six, seven, eight, nine, ten.

(Transcript of proceedings held on March 15, 2007, p. 20)

The jury's answer at the conclusion of the first phase of the second trial was that Sands's breach of the agreement was not material. We repeat that the Defendants have not presented us with any sufficiently compelling reason to disturb either the jury's credibility assessments or its factual findings.

The jury's finding on the materiality issue is supported by the evidence. It is clear that when Wagner entered into the Stock Purchase Agreement she was not aware of the substantial balance in the Stat Nurse corporate checking account maintained by Sands. Sands testified that the subject was never raised throughout negotiations for the transaction because she never intended it to be part of the agreement. The totality of the evidence introduced at the first trial established that Wagner willingly entered into the Stock Purchase Agreement without the benefit of any substantial cash reserve, such as the funds in the corporate checking account. A fair inference which the jury may have deduced from the evidence is that Sands's retention of the

12

checking account was not material because Wagner was not aware of it and never expected to receive it as part of the bargain.   The evidence would support such a conclusion.

The Kline Defendants have not presented any persuasive reason to disturb the answer to the special verdict question returned by the jury after the initial phase of the second trial. We are of the view that the jury's answer to the special verdict question at issue is not against the weight of the evidence.   The jury could have gone either way on this issue.   The Defendants are not entitled to any relief based on that argument.

The Defendants next argue that the gist of the action doctrine bars all of Sands's claims in this case except her breach of contract claim against Wagner.   This contention was addressed and rejected in our order of September 25, 2007.   The Defendants have not presented any reason to reconsider the reasoning and conclusions in our order of September 25, 2007. For the reasons stated in that order, the Defendants' arguments relating to the 'gist of the action doctrine' are without merit, including the Kline Defendants' assertion that the jury charge was defective for failing to include points on that doctrine. Based on our conclusion that the gist of the action doctrine does not apply in this case, it automatically follows that no instructions on the point were necessary or even appropriate.

Wagner's final argument is that Sands

13

> failed to present <u>any evidence</u> of any fraudulent
> representations by either [Wagner] or defendant Kline, or
> that the moving defendants committed or conspired to commit
> an unlawful act or committed or conspired to commit any
> [lawful] act in an unlawful manner.

(Wagner's Brief in Support of Post-trial Motion, p. 15)(Emphasis

added)  The Kline Defendants discuss the same argument in the

brief supporting their post-trial motion.

The fatal flaw in Wagner's argument is its premise that

Sands's testimony contains "several acts of perjury during the

second trial, tainting the verdict." (Id., p. 19)  The jury was

free to accept Sands's testimony, it obviously did so, and we see

no reason to revisit Sands's credibility.

The Kline Defendants contend that Sands failed to introduce

1) "competent evidence of any fraudulent representation by any

defendant or any detrimental reliance by Plaintiff," or 2)

detrimental reliance by Sands upon any such representations.  The

Kline Defendants argue that the allegedly fraudulent statements

made by the Defendants in their letters of February 11, 1998, and

February 13, 1998, were not fraudulent because "payments, did, in

fact, continue up through April 10, 1998, two months after these

letters were written." (Brief in Support of Kline defendants'

Post-trial Motion, p. 22)

The Defendants' joint position on those points fails to

consider a substantial amount of evidence.  In her deposition,

the relevant portions of which were read to the jury, Wagner

14

admitted that very soon after she signed the Stock Purchase
Agreement in October of 1997, she thought that she may not pay
Sands.  In addition, the letters sent to Sands in February of
1998 are subject to more than one interpretation; they may be
read to state that Sands would be paid in full for the company,
as opposed to the assertion that monthly payments would continue
for some period.  The Defendants may have had no intention to pay
Sands in full when those letters were written.

With respect to any detrimental reliance by Sands upon those
statements, the jury could have inferred that 1) the Defendants'
consistent course of providing inaccurate statements was designed
to delay any action by Sands, such as a lawsuit, to recover on
her contract with Wagner, and 2) the delay allowed Kline, with
Wagner's assistance, to begin operating Stat Health.  The suspect
timing of those events was highlighted by Sands's counsel
throughout the trial.  We are of the view that such inferences
are fairly deducible from the evidence and they fulfill the
elements necessary to establish Sands's claims based on the
alleged fraudulent misrepresentations.

The parties' arguments discussed immediately above relate
not only to the fraudulent misrepresentation issues, but also to
Sands's conspiracy claim.  That claim was presented to the jury
in the initial trial.  In order to provide the Defendants the
relief they seek based on this argument, we would have to

15

conclude that the record amassed in the initial trial lacks the

"minimum quantum of evidence from which a jury might reasonably

afford relief" or that at least one of the jury's answers to the

special verdict questions relating to the conspiracy claim is

against the weight of the evidence. *See* Parkway Garage, Inc. v.

City of Philadelphia, 5 F.3d 685, 691 (3d Cir. 1993)(quoting

Keith v. Truck Stops Corp. Of America, 909 F.2d 743, 745 (3d Cir.

1990)).

The Kline Defendants assert the related argument that we

erred

> in failing to grant Defendants' Motion for judgment as a
> matter of law [because] Plaintiff failed to present any
> competent evidence of intent[,] malice[,] or lack of
> justification on the part of Defendants Kline or Guardian[.]

(Kline Defendants' Brief in Support of Post-trial Motion, p. 2)

In order to assess the merits of those arguments, it is

necessary to consider the evidence introduced at trial and our

instructions to the jury.  We note that a civil conspiracy

> "may be proved by acts and circumstances sufficient to
> warrant an inference that the unlawful combination had been
> in point of fact formed for the purpose charged.  While
> conspiracy may be proved by circumstantial evidence, the
> evidence must be full, clear and satisfactory.  ...  Mere
> suspicion or the possibility of guilty connection is not
> sufficient, nor proof of acts which are equally consistent
> with innocence."

Scully v. U.S. WATS, Inc., 238 F.3d 497, 516 (3d Cir. 2001)

(quoting Fife v. Great Atlantic & Pacific Tea Co., 356 Pa. 265,

52 A.2d 24 (Pa. 1947).

The Defendants jointly contend that Sands failed to present <u>any</u> evidence in support of the conspiracy claim.  They fail to discuss the significant quantity of circumstantial evidence introduced at the first trial.  That evidence includes, but is not limited to the following: 1) Kline's extensive participation in Wagner's purchase and operation of Stat Nurse; 2) Wagner's admitted thoughts of closing Stat Nurse "[r]ight at the beginning," or soon after she bought the company (Trial transcript, Volume 3, pp. 27, 40); 3) Wagner's statements in letters to Kline that Kline "wouldn't have what [he did] if it wasn't for [Wagner]," that Wagner and Kline were "partners," and that "[b]y rights [Kline] owe[d] [Wagner] half" (Id., pp. 42-48); 4) the sequence and timing of events leading up to Kline's formation of Stat Health, including the practically simultaneous closing of Stat Nurse and opening of Stat Health; 5) payments made by Kline and Stat Health to Wagner shortly after Stat Health began operating; 6) Wagner's employment by Kline at Stat Health; 7) statements in documents prepared by Kline which inaccurately described the relationship between Stat Nurse and Stat Health; and 8) the testimony of Wagner's son, Kenneth Lepley.  Items numbered 7 and 8 in that list are sufficiently significant to warrant more extensive treatment.

Extremely probative evidence was introduced at the initial jury trial in the form of documents written by Kline on behalf of

17

Stat Nurse and Kline's subsequent company, Stat Health Services, Inc.

Plaintiff's exhibit 102 is a letter dated October 20, 1997, drafted by Kline, and issued on Stat Nurse letterhead.  The letter, which allegedly bore the signature of Cynthia Sands, states in relevant part as follows:

> ... I acquired a new administrative/management team at Stat Nurse, Inc.  These new individuals come to us with many years of experience in the healthcare management field from a variety of specialties.

(Exhibit P-102)  While Kline admitted that he wrote the letter, he acknowledged that the former statement was untrue. (Trial Transcript, Volume 3, p. 172)  In fact Kline and Wagner were not a "new administrative/management team" acquired by Sands, they were the new owners of Stat Nurse.  Sands testified that she did not sign the letter. (Trial Transcript, Volume 1, p. 105)  Kline asserted that he did not know who signed the letter.

Plaintiff's exhibit number 135 is a memorandum dated March 24, 1998, prepared by Kline on the letterhead of his new company Stat Health Services, Inc.'s, and issued to "All Contracted Nursing Care Facilities."  The memorandum states in relevant part as follows:  "Due to the change from Stat Nurse, Inc., to Stat Health Services, Inc., I sent a new Contract to all contracted facilities together with a Contract Amendment." (Exhibit P-135) Despite his use of the word "change" in the document Kline stated at trial that Stat Health was a "new company." (Trial Transcript,

18

Volume 4, p. 22)  That document was sent out by way of Stat Nurse's facsimile machine.  The document identifies Stat Health's address as being the same as that for Stat Nurse except for the suite number.

Plaintiff's exhibit number 136 is a letter drafted and signed by Kline, dated April 17, 1998, and sent to Merck & Co., Inc.  The letter states in relevant part as follows:

> We recently reorganized the company under a new name, Stat Health Services, Inc., to accommodate the change over of our staff from "independent contractors" to employees, as well as allowing for the addition of "Home Health Services" to the list of services we provide.

(Exhibit P-136)  The "company" referenced in that letter was Stat Nurse.  At trial Kline admitted that in fact no reorganization had occurred and that Kline did not want his company's clients to know "what had happened." (Trial Transcript, Volume 4, p. 24)

Those documents clearly evince Kline's intent to advertise or present Stat Health as the successor to, if not the same company as, Stat Nurse.  Such a relationship between Stat Nurse and Stat Health bolsters Sands's claim that Wagner and Kline conspired to defraud Sands by simply shutting down Stat Nurse so that Wagner would not be liable under the Stock Purchase Agreement.

In his testimony at the first jury trial, Kline attempted to explain the inaccurate assertions in those documents as an acceptable form of business double-talk.  When Kline's factually

19

inaccurate statements are viewed against the backdrop of events alleged by Sands and supported by her evidence and testimony, Kline's assertions provided a basis for the jury to draw far more sinister inferences.  For example, Kline's statement that "[w]e recently reorganized the company under a new name, Stat Health Services, Inc.," could easily be viewed by the jury as an admission that Kline and Wagner conspired in the manner alleged by Sands.

Wagner's son Kenneth Lepley was employed by Kline at one of Kline's nurse staffing agencies.  At that time Kline ordered Lepley not to comply with a court order requiring the business to divulge a copy of the company's employee list because, as Kline admitted to Lepley, the employees "were identical to that of Stat Nurse." (Trial transcript, Volume 2, p. 80)  At the initial jury trial, the following exchange occurred during Sands's counsel's direct examination of Lepley:

> Q:   During the time you were working for him at Guardian, did you ever talk to him or did he ever talk to you about whether there was an obligation to pay Stat Nurse or Cynthia Sands?
>                         .       .       .
> A:   I was aware of the obligation of Sherry Wagner to pay Stat Nurse.
> Q:   Did he discuss it with you?
> A:   Through general conversation it was discussed, <u>even along with Sherry</u> that yeah, <u>they</u> weren't going to pay it because – I was told that the business was a bum business.  That's what I was told.  And <u>they</u> opened up a new company because the old one wasn't profitable.
> Q:   And when they said – Don Kline said that they opened a new business, was there anything in that conversation about the obligation of this business, that being Stat

> Health, to pay back Cynthia Sands?
>
> A:    Yeah.  The conversation I heard is <u>they</u> weren't going
>       to pay her and that she wasn't going to get a penny of
>       it.

(Trial Transcript, Volume 2, pp. 81-82)(Emphasis added)   In
response to the question "[w]hat is [Wagner's] reputation for
truth and honesty," Lepley replied "[i]t's not good." (Id., p.
104)  Neither Wagner nor Kline refer in any manner to Lepley's
testimony.

Lepley's testimony supports Sands's theory that Wagner and
Kline conspired to defraud Sands by closing Stat Nurse and
opening a practically identical business in order to avoid
Wagner's obligation to pay Sands for Stat Nurse.  The testimony
also provides a firm basis for the jury to conclude that Wagner
was not credible.

The jury's answers to the special verdict questions indicate
that the jury accepted Lepley's testimony as true and disregarded
much, if not all, of Wagner's testimony.  We see no reason to
reconsider the jury's conclusions on those matters.  No new
information has been presented to impeach Sands and we can not
conclude that the jury's answer to the special verdict question
concerning the alleged conspiracy is against the weight of the
evidence.

The Kline Defendants further argue that our instructions to
the jury relating to Sands's conspiracy claim were erroneous for
the following two reasons: 1) we improperly failed to include in

the jury charge the Kline Defendants' proposed points numbered 1

through 4; and 2) the proper burden of proof with respect to the

conspiracy claim was clear and convincing evidence.

The Kline Defendants preserved the first prong of this

challenge to our jury instructions when they raised those

objections at sidebar immediately after the charge was given to

the jury.  Sands's position was that the elements of a conspiracy

claim were adequately presented to the jury.  We agreed with

Sands and overruled the Kline Defendants' objections.

However, at no point before the jury retired to deliberate

did the Kline Defendants contend that we should have instructed

the jury that the burden of proof with regard to the conspiracy

claim was clear and convincing evidence.  Consequently, the Kline

Defendants are entitled to relief on this burden of proof claim

> only if the trial court committed error that was fundamental
> and highly prejudicial, such that the instructions failed to
> provide the jury with adequate guidance, and the District
> Court's  refusal to consider the issue would result in a
> miscarriage of justice.

Alexander v. Riga, 208 F.3d 419, 426 (3d Cir. 2000)(citing Cooper

Distrib'g v. Amana Refrig., 180 F.3d 542, 549-550 (3d Cir.1999);

Fed.R.Civ.P. 51).

The seminal case cited in support of the proposition that a

civil conspiracy is required to be proven by clear and convincing

evidence is Fife v. Great Atlantic & Pacific Tea Co., 356 Pa.

265, 52 A.2d 24 (Pa. 1947).  The precise language of the court

was that "[i]t has long been the settled rule in this
Commonwealth that proof of conspiracy must be made by full, clear
and satisfactory evidence." Id., 356 Pa. At 267.  In the case of
In re Solfanelli, 221 B.R. 141 (Bankr. M.D. Pa. 1998), the
Honorable John J. Thomas described the language in Fife as
establishing "the possibility that 'full, clear and satisfactory'
is a burden of proof that would exceed the normal 'preponderance
of the evidence' burden associated with a civil case." Id., at
146.

Regardless of whether the language in Fife creates a
heightened evidentiary burden with respect to civil conspiracy
claims, under Pennsylvania law such a conspiracy may still be
proven by circumstantial evidence.  In this case there is
practically overwhelming circumstantial evidence supporting the
conclusion that a conspiracy had been formed.  Kline
misrepresented the pivotal events in documents used when he was
operating Stat Health.  Kenneth Lepley's testimony provided some
insight into Kline's state of mind and motives.  Wagner made
damaging statements indicating that Kline owed her half of
everything, that she and Kline were partners, and that Kline
would have nothing were it not for her.

Based on the totality of the evidence introduced in this
case, we are of the view that the type and quantity of evidence
is sufficient to support the jury's conclusions regarding Sands's

conspiracy claim.  We further conclude that our jury instructions
did not contain any plain error with respect to that claim.

We next turn to the objections which the Kline Defendants
timely raised after we gave the jury charge in the first trial.
These objections pertain to the Kline Defendants proposed jury
instructions numbered 1 through 4.

The first and second requested points discuss an
individual's 1) ability to compete with a former employer in the
same business or industry, and 2) ability to use skills acquired
through former employment.  We did not view those instructions as
necessary or advisable because neither of them was related to a
special verdict question.  Although they indirectly relate to
Kline's state of mind in setting up a competing business, as
discussed in detail below, that topic was adequately addressed in
the instruction given on the conspiracy claim.  The Kline
Defendants have not provided any reason to alter those views.  We
fail to see any error in failing to give either or both of those
proposed instructions.

The third proposed jury instruction relates to Sands's
unjust enrichment claim.  This claim was not reached by the jury.
Consequently, the Kline Defendant's argument based on that
instruction is moot.

The fourth and final proposed jury instruction relates to
the state of mind necessary for a defendant to be found liable on

24

Sands's conspiracy claim.  The Kline Defendants argue that malice
is an element of a conspiracy claim, no evidence of malice was
presented, and the jury charge failed to list malice as an
element.

The primary case upon which the Kline Defendants rely states
the following:

> Proof of malice, i.e., an intent to injure, is essential in
> proof of a conspiracy. Miller v. Post Publishing Co., 266
> Pa. 533, 110 A. 265 (1920); Miller v. Harvey, 215 Pa. 103,
> 64 A.2d 330 (1906); Irvine v. Elliott, 206 Pa. 152, 55 A.2d
> 859 (1903). This unlawful intent must be absent
> justification.

Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 211, 412 A.2d
466, 472 (1979).

Our instruction to the jury regarding the conspiracy stated
that

> [i]n order to prove the conspiracy alleged in this case,
> Mrs. Sands is required to establish that Mrs. [sic] – Mrs.
> [sic] Wagner and Mr. Kline individually or through the
> corporations that they represent agreed with each other to
> shut down Stat Nurse and begin Stat Health, Inc., in an
> effort to defraud Mrs. Sands out of the money allegedly owed
> to her for the sale of Stat Nurse, Incorporated.

(Trial Transcript, Volume 5, p. 43)  Our instruction advised the
jury that Sands could succeed on her conspiracy claim only if the
Defendants's actions were taken "in an effort to defraud" Sands.
In the context of this case, the specific form of malice at issue
was the Defendants' intent to defraud Sands.  The jury had to
find that the Defendants' actions were motivated by that intent
in order to find in favor of Sands on her conspiracy claim.  We

25

are of the view that the jury instruction adequately addressed the state of mind which the Defendants had to possess in order to be liable.

Our instructions to the jury regarding punitive damages are also relevant because the jury concluded that the Kline Defendants are liable for $1,000,000 in such damages.  On the question of whether Sands was entitled to an award of punitive damages, the jury was instructed as follows:

> ... if you find that the conduct of one or both of the defendants was outrageous, you may award what are called punitive damages as a well as compensatory damages in order to punish such a defendant for his or her conduct and to deter that defendant and others from committing similar acts.
> A person's conduct is outrageous when he or she acts with bad motive or acts with reckless indifference to the interests of others.

(Id., p. 44)

Based on those instructions, before it could award any punitive damages, the jury first had to conclude that the Defendants' conduct was outrageous as defined in the instructions.  The jury decided that the standard was met and they awarded such damages.  That decision bolsters the conclusions that sufficient evidence of a conspiracy was introduced and the Defendants conspired with sufficiently culpable states of mind.  The Kline Defendants' arguments to the contrary are not persuasive.

The Kline Defendants next summarily argue that

26

no clear and convincing evidence was presented to establish conspiracy to defraud, and as such, the answer to Special Verdict Question No. 12 was unsupported by evidence and against the weight of the evidence.

(Brief in Support of Kline Defendants' Post-trial Motion, p. 24) This argument is based on other arguments above which we have found to be unpersuasive. For that reason, this summary argument is also without merit.

The less rigorous standard governing the Defendants' post-trial motions provides for relief where the court concludes that "a miscarriage of justice would result if the verdict were to stand." Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992)(quoting Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1352 (3d Cir. 1991)), *cert. denied,* --- U.S. ---, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993). The Defendants contend that the jury verdict constitutes a miscarriage of justice because in their view a number of the jury's conclusions were against the weight of the evidence.

After considering all of the Defendants' arguments, the totality of the evidence introduced, and the jury's answers to the special verdict questions, we are not convinced that a miscarriage of justice would result if the verdict in this case were to stand.

We will deny the Defendants' post-trial motions.

NOW, THEREFORE, IT IS ORDERED THAT:

1.   The Kline Defendants' "Motion to Set Aside Verdict and

27

for New Trial and Motion for Judgment NOV" (Document 563) is denied.

2.    The Wagner Defendants' "Motion to Set Aside Verdict and for New Trial and Motion for Judgment NOV" (Document 564) is denied.

s/Malcolm Muir
MUIR, U.S. District Judge

MM:gja